## CHARLES EISLER *v.* EASTERN STATES CORPORATION

[No. 34, October Term, 1943.]

*Decided December 14, 1943.*

The cause was argued before SLOAN, C. J., DELA-PLAINE, COLLINS, MARBURY, GRASON, MELVIN, ADAMS, and BAILEY, JJ.

*William Saxon,* with whom was *William Harris* on the brief, for the appellant.

*Richard W. Case* and *R. E. Lee Marshall,* with whom were *Marshall, Carey & Doub* on the brief, for the appellee.

ADAMS, J., delivered the opinion of the Court.

In this action the complainant, a stockholder in the defendant corporation, seeks the appointment of a receiver for the property and assets of the defendant, with full power in the receiver to institute legal proceedings against the officers and directors of the defendant corporation for the recovery of losses allegedly suffered by the defendant corporation by reason of the violation of their trust duties as said officers and directors of the defendant corporation.

Complainant alleges that in 1930 he purchased 200 shares of common stock of the defendant, paying for the same about $25.50 per share, and that during the same year, as president for the Lesire Corporation, he purchased for said corporation 300 shares of common stock of the defendant corporation at approximately $42 per share. The Lesire Corporation is not a party to this suit, but plaintiff purports to act in its behalf. Defendant corporation's stock structure is as follows: (a) 40,000 shares, $7 cumulative Series "A," preferred stock (no par value) ; (b) 60,000 shares, $6 cumulative Series "B," preferred stock (no par value) ; (c) 572,132 shares of common stock (no par value).

Plaintiff is thus the owner of slightly less than 35/100,000 of the common stock.

Complainant charges that the majority of the board of directors of the defendant at the present time and for many years have not owned stock in the defendant corporation, but he sets out in the bill a statement as of April 26, 1942, which shows that the holdings of the officers and directors "owned of record and beneficially" were 5,534 shares of preferred "A," 11,524 of preferred "B," and 238,250 shares of common (41% plus of total authorized common).

Complainant charges that the defendant corporation was organized in 1925 for the purpose of raising funds for the benefit of the St. Regis Paper Company, and that the general public was not advised of this purpose, and that in 1928 the sum of $18,577,593.69 was transferred to

the St. Regis Paper Company for which the defendant received 1,000,000 shares of common stock of the said paper company. The bill alleges that the directorate of the defendant and said paper company were interlocking and that the purpose of the transaction was to further the individual interests of said officers and directors, and not to promote the interests of the defendant corporation. The bill alleges that at the time of the stock purchase in 1928, there were eight officers and directors common to the two corporations, only three of whom, however, are still officials of the defendant corporation.

Complainant avers a number of other transactions in the nature of investments which have resulted in heavy loss to the defendant corporation, alleging in many instances that the directorates of the corporation whose stock was acquired and the defendant corporation were interlocking and that the transaction was for the individual benefit of the officers and directors of the defendant, rather than for the best interests of the defendant.

A statement of the defendant corporation's investments as of December 31, 1941, shows a total of investments of $19,834,111.33, with a valuation based on market quotations of $1,956,258.

Complainant alleges that "during a period of over ten years and up to the present time there was hardly any activity in the business of the defendant corporation and that in the period between 1930 when the plaintiff became a stockholder, and June 1942, when the present proceeding was begun, the changes in the portfolio of the defendant corporation have been relatively insignificant compared with the aggregate amount of the portfolio. Some small amounts of securities have been sold. The only stocks which have been purchased in recent years consist of six blocks of 100 shares each of stocks listed on the New York Exchange and which were purchased on that exchange. The purchases made by the defendant corporation since 1930 down to the

present time would not exceed in the aggregate $150,000.00."

The bill of complaint alleges that the defendant corporation has no funded debt and that the officers and directors, with the exception of the assistant secretary and assistant treasurer, are not paid any salaries by the defendant corporation.

The court is therefore asked to appoint a receiver for a solvent corporation which is not in danger of becoming insolvent or in any immediate danger because of transactions which occurred prior to 1930, when the complainant acquired his stock. The bill charges practically nothing that has happened since complainant became a shareholder except failure to dispose of investments made prior to 1930. The depression of 1929 may account for some of the losses of which complainant complains. It is significant that no other stockholder of the defendant corporation has come forward and sought to intervene. This suggests that practically all of the stockholders are satisfied with the present management of the company. Nor is there any averment in the bill that the complainant made any effort to obtain remedial action by application to the directors of the corporation or to the body of the shareholders. Unless the officers and directors against whom action is contemplated control the majority of the shares (and there is no averment that this is the case), relief could probably be had by application to the body of shareholders.

14 *C. J., Corporations*, Sec. 1339. "Before a stockholder may sue the Corporation to enforce and protect its rights or to redress wrongs to it, he must first make an earnest and unsuccessful effort to obtain remedial action by the Corporation itself, first by application to the directors, and then by application to the body of the stockholders. But he need not do so where the circumstances are such that an application would be futile." See also 18 *C. J. S., Corporations*, Sec. 525.

The mere fact that investments were made by one corporation in another when certain directors of the

investing corporation were also directors of the other corporation is not sufficient to raise the presumption that the transaction was fraudulent.

In *Williams v. Salisbury Ice Company*, 176 Md. 13, 3 A. 2d 507, it is stated in the headnote:

"The fact that three of the directors of a corporation are also directors of a competing corporation does not afford sufficient ground to presume against the legality and fairness of any transaction between the two companies."

"And that the acts complained of refer to dealings of a corporation with another corporation, or that the same person or persons are officers and hold majority of stock in both corporations, while the plaintiff is neither officer nor director in one of them, does not enlarge the jurisdiction of the court of equity to interfere."

At page 27 of the said opinion in 176 Md., at page 514 of 3 A. 2d, it is stated by the court: "The power to appoint receivers is a discretionary one, which should be exercised with great circumspection, and unless it clearly appears that there is fraud, spoliation, or an imminent danger of the loss of the property involved in the case, if the immediate possession of the same is not taken by the court, jurisdiction should not be assumed in the premises."

The allegations of the bill of complaint indicate that little, if any, action by the directors and officers of the corporation which is complained of has occurred since 1930. The principal complaint since 1930 is that the officers and directors have been inactive. Under the circumstances there does not appear sufficient danger to the corporation or its property to justify a court of equity taking over the management and operation of the corporation. There is not a present showing of such fraud, spoliation, or imminent danger of the loss of the property of the corporation that would justify taking the management of the corporation out of the hands of its officers and stockholders. For this reason we conclude that a proper showing has not been made for the appointment of a receiver.

A further question arises as to the right of the complainant to secure relief based on transactions which occurred prior to the time that he became a stockholder. In the case of *Matthews v. Headley Chocolate Company*, 130 Md. 523, at page 531, 100 A. 645, at page 649, the court said: "The authorities are by no means uniform as to whether a shareholder who becomes such after the acts complained of were committed can sue, * * *."

The court quoted with approval from the *Home Fire Insurance Company v. Barber*, 67 Neb. 644, 657, 93 N. W. 1024, 60 L. R. A. 927, 108 Am. St. Rep. 716, the following: "Sound reason and good authority sustained the rule that a purchaser of stock cannot complain of the prior acts and management of the corporation."

At page 534 of 130 Md., at page 650 of 100 A., the court said: "If this was a suit by stockholders, it would seem to us to be clear that holders of the stock who became such after the transactions complained of took place should not be permitted to recover against the directors."

And at page 536 of 130 Md., at page 651 of 100 A., it was said: "Inasmuch as by the change of the majority of stock those who were minority stockholders at the time of the transactions complained of are now able to have the suit brought in the name of the company, we are of the opinion that it can be maintained, in that name, instead of in the names of the minority stockholders but for their benefit."

The court in said case clearly decided that such recovery could be had in a suit in the name of the corporation, and it would be limited to protect those who were minority stockholders at the times of the transactions complained of.

Our conclusion is, therefore, based on the authority of this case that the appellant does not have the standing to complain of acts and management of the corporation prior to the time that he became a shareholder thereof.

As to any transactions that have occurred subsequent to the time that he became a shareholder, he is entitled

to seek redress in a derivative stockholder's suit against the officers and directors of the corporation who have committed waste or mismanaged its affairs, resulting in loss to the complainant. The case of *Williams v. Messick,* 177 Md. 605, 11 A. 2d 472, 474, is authority for this proposition. In that case the court said: "Whereas Williams in the first suit (*Williams v. Salisbury Ice Company,* 176 Md. 13, 3 A. 2d 507) sued in representation of himself alone, now he sues on behalf of the Salisbury Ice Company, after having requested that company's officers to take action, and having been refused. * * * And the suit is directed against Messick and his company to require an accounting and readjustment from one who, as the controlling stockholder and officer, and at the same time owner of the competing company, was in a fiduciary position with relation to the Salisbury Company and its minority stockholders, and by violation of the duties of that position has been guilty of constructive fraud."

For the reasons hereinabove set out, the order of court from which the appeal herein was entered will be affirmed.

*Order affirmed, with costs.*

MARBURY, J., dissented.